No. 55,450

STATE OF KANSAS, *Petitioner,* v. ROBERT M. SOCOLOFSKY, *Respondent.*

(666 P.2d 725)

On March 2, 1983, a panel of the Board for Discipline of Attorneys filed its report with the Clerk of the Appellate Courts in which they found the respondent, Robert M. Socolofsky, a member of the bar of this State, guilty of a violation of the Code of Professional Responsibility, DR 7-108(D). 230 Kan. cxxvi.

The panel, in its report stated, *inter alia:*

"SUMMARY OF EVIDENCE

"Highly summarized, the evidence revealed the following, to wit:

"It is uncontroverted that on or about June 14, 1982, the respondent, as county attorney of Riley County, Kansas, caused an anonymous mailing to discharged members of a jury that had on May 20, 1982 acquitted a criminal defendant on charges of selling a controlled substance. The content of the mailing was a copy of a newspaper article that the acquitted defendant subsequently had pled guilty to a misdemeanor charge of delivery of L.S.D. in an unrelated case.

"Members of that particular jury who received the anonymous mailing were part of a larger panel of prospective jurors of approximately 148 persons who were to be called to serve for jury duty for the May, 1982 term of Court which was from May 1 to the end of September, 1982. It was the experience of the District Court in Riley County, Kansas that better than sixty percent (60%) of the persons on the panel list would be called to serve on more than one jury during any term of Court. An assistant to the District Court Judge, responsible for compiling juror lists for each case to be tried, indicated that it was not unusual for a person on the larger jury panel list to be called to serve on more than one jury during any particular term of Court.

"On June 16, 1982, another criminal action with a different criminal defendant came on for hearing in the District Court of Riley County, Kansas with the respondent appearing as county attorney. The criminal defendant in this subsequent case was charged with two counts of selling a controlled substance. Six or seven members of the jury panel called for this subsequent criminal case had served as jurors on the prior criminal case resulting in the acquittal on May 20, 1982 and had received the respondent's anonymous mailing.

"On the morning of June 16, 1982, the District Court Judge became aware of the six or seven jury panel members who had received the anonymous mailing and declared a mistrial. The District Court Judge indicated a concern that the anonymous mailings might constitute criminal jury tampering and directed the respondent to immediately initiate an investigation to determine the source of the anonymous letters either through the respondent's office or through the police department.

"Without acknowledging his responsibility for the anonymous mailings to the

District Court Judge or to the police department, respondent contacted the police department to initiate the investigation requested by the District Court.

"Early the next day, June 17, 1982, investigations by the police department determined a similarity of type between that on one of the envelopes used in the anonymous mailing and that received on communications from the District Attorney's office. By noontime, respondent's secretary informed the police department she had mailed the anonymous letters to members of the jury in the drug related acquittal case at the direction of the respondent. At approximately 4:00 p.m., respondent met with the police department investigators and advised he was solely responsible for the anonymous mailings. Respondent then went to the chambers of the District Court Judge and again admitted his responsibility for the mailings.

"Respondent then made a public announcement as to his responsibility for the mailings and an apology for his actions to the news media. Respondent testified that he mailed the newspaper articles in question about the acquitted defendant's subsequent plea of guilty to other drug related charges because the respondent had been informed that the jury, although believing the acquitted defendant was, in fact, guilty, felt he was a nice, college kid and had never done anything like that before. Respondent testified that he wanted to make sure that the jurors saw the newspaper article because the jurors had operated on an untrue assumption and respondent felt they had made a mistake.

"The newspaper article in question had been published about June 4, 1982 and several days later, respondent cut the article out and took it to his office on or about June 8 or 9, 1982 and told his secretary to make twelve copies and to mail those copies anonymously to the jurors in the acquittal case. Respondent was not aware of the actual mailing date of the anonymous mailings, but at no time prior to June 16, 1982 had he seen the final jury panel list for the trial to commence on June 16, 1982. Respondent also testified that he had no thought or realization that the same jurors in the acquittal case would appear on the June 16, 1982 jury panel.

"Respondent further testified that from the time he ordered the mailing until the mentioning of the mailings on June 16, 1982, he had not thought further about it and was shocked and frightened by the suggestion of the District Court that perhaps a crime of jury tampering had been committed.

"Respondent further testified that had he realized that the jurors in the acquittal case would have been called for further jury service, he would not have mailed the clipping and that in his experience as a District Attorney, he had never seen jurors called back for further duty so soon.

"Before beginning his testimony, respondent advised the panel and all concerned that he understood that his testimony could be grounds for criminal prosecution, but he chose to waive all his constitutional rights in order to answer any question concerning this matter.

"Respondent, in concluding his testimony, admitted that it was a mistake to make the anonymous mailing and that although the results were terrible, they were not intended.

"A great deal of evidence from the bench, bar, and laity as to the respondent's good character and reputation was introduced and admitted, all of which is believed by the panel."

IT IS THEREFORE BY THE COURT ORDERED that the report of the panel of the Board for Discipline of Attorneys be and the same is hereby accepted and approved.

IT IS FURTHER BY THE COURT ORDERED that the respondent be and he is hereby disciplined by Public Censure, the costs herein are assessed to the respondent, and the Reporter of the Appellate Courts is directed to publish this order in the official Kansas Reports.

Effective this 15th day of July, 1983.